Ruffin, C. J.
 

 It does not appear to the Court, that the younger sons are entitled to the surplus of the personal estate absolutely. The residue of the real estate and the residue of the slaves are given away by distinct clauses* But there is no general residuary disposition of the personalty at large, after the payment of debts, charges and legacies: and any surplus, not disposed of, goes of course to those entitled under the statute’ of distributions. It seems highly probable from the face of the will, that the testator did not expect any surplus, or very little, and he may not have considered it worth giving away. But a residue is always more or less uncertain, and the amount of it can afford but a feeble, inference of an intention, that this or that person should have it. Here, indeed, it was said, that the general scheme of the will shows a preference for tht3se two sons, after having made a provision for the eldest son; and therefore the testator must be taken to have intended, they should have the surplus, if there should be any, and not merely be educated out of it. But those considerations cannot have that effect. For, the large bounties to the younger sons — if out of due proportion with the estate — may have induced the testator to give them no more, instead of raising a presumption that his will was, that they should succeed to all that should be left. Besides, the argument is inconsistent with itself, since the charging of their education upon the residue implies, that the sons were not to take the residue absolutely. At all events, whatever conjectures may be formed as to the desires of a testator, and as to what he would have put in his will, if it had occurred to him, yet
 
 *404
 
 the will cannot be construed, as if it had a clause expressive of the supposed desire, but must be taken as it is. Here there is no residuary clause, under which the sons, or any one, can claim : and therefore what may remain after deducting the debts and charges must be declared to belong to the widow and next of kin.
 

 But the Court is also of opinion, that the education and maintenance of the two younger sons is in the first instance charged on the residue, if there should be enough to defray the expense after payment of the debts. After directing, in the beginning of the will, that the money due him and all his personal property (except his slaves and such other things as should be afterwards specifically bequeathed) should be the fund for the payment of his debts, the testator in the 11th clause expresses a strong desire, that as much of the stocks of horses, mules and cattle, provisions'and farming tools should be reserved thereon, as would be sufficient to keep up a certain plantation, which he gave to the two sons, and work it for their benefit. Nevertheless, he would not order it peremptorily, but left it to the discretion of his executors. Yet it was not an arbitrary discretion, nor one to be exercised upon'their general judgment of what might be best tor the sons. On the contrary, the testator plainly says, they are to stock and work the plantation, if it can be done consistently with two things, that is, with a view, first, to the indebtedness of the estate, and, secondly, to the means of affording the sons a good education. That implies the intention, that the fund was to be provided for the education before the stock reserved for the plantation should be put on it, and imports a prior charge of the education on the general residue. But it was argued for the plain» tiff, that the testator might have meant there, that the education was to be a charge on the residue, in case the pr'ofits of their own property should not be sufficient for that, purpose ; and that he may have expected they would,
 
 *405
 
 if the Deans plantation should be worked for them, and then it would be reasonable they should not look to the residue. The will might have been more explicit on that point. But there does not seetn to be enough to import the supposed restriction on the provision for the education. The argument yields, that it was certainly the intention of the testator, that his younger sons should be well educated at all events, and that the expense was to be paid out of his estate in some events. But it supposes an exception to have been intended, when the profits of their property should be sufficient for the purpose. Now, that exception is not declared in the will: and it could not be interpolated on conjecture, even if the question stood on the 11th clause alone. But the 12th clause furnishes further and convincing proof, that the testator intended them to be educated independent of their own property, except as it might contribute
 
 pro rata.
 
 For, the testator then again connects the debts and education, and provides, that, if the money due to him and the sales of his perishable estate should not be sufficient to pay the debts, then negroes were to be sold, and each legatee contribute in proportion to the value of his or her donations ; and then immediately follows precisely a similar provision for raising a fund “lor the purpose of educating and maintaining my said two sons, provided my estate shall prove to be indebted to a greater amount than supposed.” The charge on the estates given to the younger sons is only in common with that on the other gifts, and, does not attach to either gift, until the fund constituting the residue should be exhausted. Consequently, as they are to be well educated at all events, the residue is the proper fund to be applied in the first instance for that purpose.
 

 There must, therefore, be a reference to ascertain the residue, and what part of it ought to be set apart for the education of the younger sonsj and. their maintenance
 
 *406
 
 during the periods of their education. The costs of the suit will be paid out of the fund in the hands of the executors.
 

 Per Curiam.
 

 Decree accordingly.